FILED
United States Court of Appeals
Tenth Circuit

June 25, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENDALL CROCKETT, a/k/a Grizzle,

    Defendant - Appellant.

No. 18-1322
(D.C. No. 1:17-CR-00339-PAB-3)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **BACHARACH**, Circuit Judges.
_____

In August 2017, Kendall Crockett and three others stole 56 firearms from a

Cabela's sporting goods store in Thornton, Colorado.  After the burglary, he and the other

thieves distributed the firearms to members of their "Bloods" gang.  Mr. Crockett was

charged with, and pled guilty to, one count of theft of firearms from a federal firearm

licensee's inventory and one count of possession of stolen firearms.

At sentencing, the district court increased Mr. Crockett's base offense level under

United States Sentencing Guideline ("U.S.S.G." or "Guidelines") § 2K2.1(b)(5), which

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

instructs the sentencing court to apply a four-level increase if the defendant "engaged in the trafficking of firearms." This enhancement applies if the defendant transferred two or more firearms to an individual and "knew or had reason to believe that" (1) the recipient's "possession or receipt of the firearm would be unlawful," or (2) the recipient "intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1, cmt. n.13(A). The district court calculated a Guidelines range of 87 to 108 months and sentenced Mr. Crockett to 80 months in prison. Mr. Crockett now challenges the procedural reasonableness of his sentence, arguing there was not sufficient evidence to justify the four-level increase.

We hold that the district court did not err in increasing Mr. Crockett's base offense level under U.S.S.G. § 2K2.1(b)(5). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. BACKGROUND

Mr. Crockett is a member of the Bloods gang. In August 2017, his fellow gang members stole 18 firearms from a Cabela's store in Lone Tree, Colorado and distributed them to members of the gang. Later that month, Mr. Crockett and three other gang members stole 56 firearms—primarily handguns—from a second Cabela's store in Thornton, Colorado. The three gang members drove a stolen Jeep through the front of the store and, after gathering the guns, fled. Mr. Crockett, who acted as a lookout and getaway driver, was waiting nearby with a second car. When the other three departed the store, they joined him and drove from the scene.

2

After the burglary, Mr. Crockett and his accomplices distributed the stolen firearms to other members of the Bloods gang. One of these guns was later used in a menacing case, in which an individual brandished the firearm at a tow truck driver.

A grand jury indicted Mr. Crockett for two counts of stealing firearms from a federally licensed dealer, in violation of 18 U.S.C. § 922(u), and two counts of possession of stolen firearms, in violation of 18 U.S.C. § 922(j). He pled guilty to one count of each offense. His written plea agreement contained a stipulation of facts, which stated that "[Mr. Crockett and the other robbery participants] distributed the stolen firearms to fellow Bloods gang members, including members that the defendants knew were prohibited from possessing firearms." ROA, Vol. I at 27. It also contained an advisory Guidelines sentence calculation, which included "a 4-level increase [under U.S.S.G. § 2K2.1(b)(5)] because the defendant trafficked in firearms." *Id.* at 28.

Following the plea, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR applied § 2K2.1(b)(5)'s four-level increase and calculated a Guidelines imprisonment range of 87 to 108 months. Mr. Crockett objected, arguing that the Government had not "establish[ed] that he was aware that the firearms were being given to an individual whose possession would be unlawful as defined in the [commentary to § 2K2.1(b)(5)]." ROA, Vol. I at 51. He thus argued that the four-level enhancement should not apply.

At sentencing, the district court overruled Mr. Crockett's objection. Although the court found "no evidence that Mr. Crockett was involved in distributing . . . firearms" to individuals he "knew were prohibited from possessing firearms," ROA, Vol. III at 14, it

observed that "the Bloods are . . . a well-known gang that's involved in a lot of criminal activity" and that "common sense would suggest . . . that defendant knew or should have known that those individuals . . . intended to use or dispose of the firearms unlawfully," *id.* at 15. It thus applied § 2K2.1(b)(5), concluding that the Government carried its burden of proof "by showing that the defendant knew or had reason to believe that his conduct would result in the transport, transfer, [or] disposal of a firearm to an individual who intended to use or dispose of the firearm unlawfully." *Id.*

The district court sentenced Mr. Crockett to 80 months in prison.[1] Mr. Crockett challenges that sentence, arguing that the district court erred in applying a four-level increase under § 2K2.1(b)(5).

## II. **DISCUSSION**

### A. *Legal Background*

#### 1. **Standard of Review**

We review criminal sentences for reasonableness, applying an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 56 (2007). This review "includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1261 (10th Cir. 2018); *see also Gall*, 552 U.S. at 49-50.

---

[1] The court granted a downward variance from the Guidelines range of 87 to 108 months because Mr. Crockett had a difficult upbringing, had not previously served time in prison, and "ha[d] the ability to straighten out." ROA, Vol. III at 40.

Mr. Crockett challenges only the procedural reasonableness of his sentence. *See Gall,* 552 U.S. at 51 (procedural errors include "failing to calculate (or improperly calculating) the Guidelines range"). When assessing procedural reasonableness, "[w]e review de novo any legal questions in a district court's application of the Guidelines, and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Serrato*, 742 F.3d 461, 468 (10th Cir. 2014) (quotations omitted).

The district court found that Mr. Crockett had knowledge or reason to believe that he was distributing weapons to recipients who intended to use or dispose of them unlawfully. This is a factual determination that we review for clear error. *United States v. Garcia*, 635 F.3d 472, 478-79 (10th Cir. 2011) (reviewing for clear error the district court's determination of the defendant's intent under § 2K2.1(b)(5)); *United States v. Juarez*, 626 F.3d 246, 252 (5th Cir. 2010) (noting that clear error review applies to district court's determination that a defendant had the requisite knowledge to warrant a § 2K2.1(b)(5) increase).[2] Under clear error review, we "view the evidence and inferences [drawn] therefrom in the light most favorable to the district court's determination." *United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir. 2003). "To constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to

---

[2] The parties agree that clear error review applies. *See* Aplt. Br. at 1 (stating the issue on appeal as "[w]hether the district court erred"); Aplee. Br. at 1 (same).

substitute our judgment for that of the district judge." *United States v. McClatchey*, 316 F.3d 1122, 1128 (10th Cir. 2003) (quotations omitted).

2. **U.S.S.G. § 2K2.1(b)(5)**

U.S.S.G. § 2K2.1(b)(5) provides for a four-level increase in a defendant's base offense level "[i]f the defendant engaged in the trafficking of firearms." The commentary to this guideline explains:

> Subsection (b)(5) applies . . . if the defendant
>
> (i)    transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii)    knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual
>
>     (I)    whose possession or receipt of the firearm would be unlawful; or
>
>     (II)    who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1, cmt. n.13(A);[3] *see United States v. McConnell*, 605 F.3d 822, 824 (10th Cir. 2010) ("Commentary to the Guidelines is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." (quotations omitted)).

"At sentencing, the government must prove the facts supporting a sentencing enhancement by a preponderance of the evidence." *Garcia*, 635 F.3d at 478. To carry

---

[3] The parties do not dispute that Mr. Crockett satisfied the first requirement, cmt. n.13(A)(i)(I), by transferring two or more firearms to an individual. Only the second requirement, cmt. n.13(A)(i)(II), is at issue in this case.

this burden, it must show that "the existence of a fact is more probable than its nonexistence." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993).

## B. *Analysis*

Mr. Crockett argues the district court erred in increasing his base offense level under § 2K2.1(b)(5). He asserts that "the government did not prove by a preponderance of the evidence that [he] knew or had reason to believe that his conduct would result in the transport, transfer, or disposal of a firearm to an individual who intended to use or dispose of the firearm unlawfully." Aplt. Br. at 2. According to Mr. Crockett, "[t]he only evidence relied on by the district court to apply the four-level increase was Mr. Crockett's stipulation in the plea agreement that he and his codefendants distributed fifty-six stolen firearms to fellow Bloods gang members." *Id.* This stipulation, he claims, "was insufficient for the court to apply a four-level increase under . . . § 2K2.1(b)(5)." *Id.* at 3.

As discussed above, § 2K2.1(b)(5) applies if the defendant transferred firearms to an individual and either (1) "knew or had reason to believe that" the recipient's "possession or receipt of the firearm would be unlawful," or (2) "knew or had reason to believe that" the recipient "intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1 cmt. n.13(A). The district court found that the first criterion was not satisfied because "the government [could not] prove . . . by a preponderance of the evidence" that Mr. Crockett distributed the weapons to individuals he "knew were

7

prohibited from possessing firearms." ROA, Vol. III at 14. It thus relied on the second criterion to apply the enhancement, reasoning:

> [I]f you use common sense, . . . the Bloods are . . . a well-known gang that's involved in a lot of criminal activity. And all the participants in the burglary are fellow gang members and they are distributing to Bloods members . . . all these brand new firearms, so I think that common sense would suggest and, in fact, that sustains the government's burden of proof that the defendant knew or should have known that those individuals to whom the firearms were being given to would—that they intended to use or dispose of the firearms unlawfully.

*Id.* at 15.

If Mr. Crockett's gang were involved in criminal activity, "common sense" permits an inference that he knew or should have known that the recipients of the guns intended to use them unlawfully. The district court assumed the gang was involved in criminal activity without reference to evidence and without explanation of whether or how judicial notice might apply. We nonetheless affirm because we cannot say the court's finding was clearly erroneous in light of the record.

The record shows that in August 2017, members of Mr. Crockett's Bloods gang robbed Cabela's stores in Lone Tree and Thornton, Colorado. In the Lone Tree robbery, the gang stole 18 firearms, which they distributed to other members of the gang. In the Thornton robbery, the gang members stole 56 firearms. Mr. Crockett admitted that he participated in this robbery, that he and the other robbers distributed the stolen firearms to others in the gang, and that he knew some of recipients were prohibited from possessing weapons. The guns Mr. Crockett distributed were primarily small, concealable

handguns.  And at least one of the weapons from the Thornton robbery was later recovered from an individual who brandished the gun at a tow truck driver.

As discussed above, "[t]o constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal."  *McClatchey*, 316 F.3d at 1128 (quotations omitted).  And when "assessing a defendant's mental state for the purposes of sentencing, a court may draw common-sense inferences from the circumstantial evidence."  *Garcia*, 635 F.3d at 478.  Here, members of a gang robbed two sporting goods stores and stole a large quantity of guns.  They distributed those guns to members of the very gang that performed the robberies.  And at least one of those weapons was later used for an unlawful purpose.  Given these facts, it was not unreasonable for the court to conclude it was more likely than not that Mr. Crockett knew or should have known that he was distributing firearms to individuals who intended to use or dispose of them unlawfully.  The district court did not err in increasing Mr. Crockett's sentence under § 2K2.1(b)(5).

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court.


Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge


9